AO 106 (Rev. 04/010) Application for Search Warrant        AUTHORIZED AND APPROVED/DATE:   s/Tiffany Noble 10/24/2022

# UNITED STATES DISTRICT COURT
### for the
WESTERN _____ DISTRICT OF _____ OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of **White Cloud Mobile Cell Phone IMEI: 350256835445861** CURRENTLY LOCATED AT the Oklahoma City Police Department in Oklahoma City, Oklahoma | )<br>)<br>)  Case No: MJ-22-774-STE ___<br>)<br>)<br>) |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 921(g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

See attached Affidavit of Special Agent Aaron O'Dell, Homeland Security Investigations, which is incorporated by reference herein.
- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

Aaron O'Dell
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date:   **Oct 24, 2022**

*Judge's signature*

City and State: ▉▉▉▉▉▉▉▉
**Lawton, OK**

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION UNDER RULE 41 FOR A WARRANT

I, Aaron O'Dell, a Special Agent (SA) with Homeland Security Investigations (HSI), having been duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with HSI, and I have been employed with HSI since March 2004. I am currently assigned to the HSI office in Oklahoma City, Oklahoma (HSI Oklahoma City). During my time in law enforcement, I have successfully completed the Federal Criminal Investigator Training Program and the Immigration and Customs Enforcement (ICE) Special Agent Academy at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia.

2.      This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3.      I make this Affidavit in support of an application for a search warrant authorizing the examination of a cellular electronic device, phone number 572-208-7644, found in Garard GARRETT's possession (**Target Device**) for evidence of violations of federal law to wit: United States Code, Title 18, Section 922(g)(1), Felon in Possession of a Firearm. The **Target Device** is currently securely stored at the HSI Oklahoma City office, within the Western District of

Oklahoma. The applied-for warrant would authorize the forensic examination of the Target Device.

## PROBABLE CAUSE

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

4.      On August 11, 2022, E.T. called a domestic violence detective employed by the Oklahoma City Police Department (OCPD). According to E.T., her boyfriend, Garard GARRETT, has an active warrant and she is in fear for her life. At the time of the phone call, GARRETT did have an active warrant in Oklahoma County District Court case number CF-2022-2698. The phone call lasted approximately 1.5 hours.

5.      E.T. was very emotional during the phone call, telling the detective that if GARRETT knew she called 911, he would kill her. E.T. also stated that if officers showed up at the apartment complex, he would kill the police. E.T. stated GARRETT had a long, light brown shotgun in the apartment, later stating she does not know the difference between shotguns and rifles. E.T. also stated GARRETT sent her a photo of the gun "last week" with text that said, "this is what I got now," a message that she took as a threat.

6.      During the phone conversation with Det. Titus, E.T. received numerous texts and phone calls from GARRETT asking why it was taking her so long to get back home. E.T. stated GARRETT was no longer in their apartment and was somewhere outside. According to E.T., GARRETT had recently gotten a "government phone" and his new phone number was 572-208-7644. E.T.'s phone number was 405-885-0983.

7.      While E.T. and Det. Titus were on the phone, Agent Wesley Cadena, United States Marshal's Service Task Force Officer, was at E.T.'s apartment complex and observed GARRETT duck into a breezeway. Agent Cadena knew the breezeway had only one way in and

2

out, so he maintained visual on the breezeway while waiting on other OCPD officers to arrive. After some time, GARRETT exited the breezeway and surrendered. The **Target Device** was located in GARRETT's hand and confiscated.

8.      Once GARRETT was arrested, E.T. returned to the apartment complex and signed a waiver, allowing officers to search her apartment, number 303, for the firearm she believed was a shotgun. During the subsequent search, officers located a Marlin, Glenfield Model 60, .22 LR caliber, rifle in the combined kitchen and dining area of the apartment. The rifle is consistent with the physical description E.T. gave despite not being a shotgun.

9.      The rifle was examined by Agent Brenden Taylor of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Based upon his examination, Agent Taylor determined the rifle is a firearm within the meaning of 18 U.S.C. § 921(a)(3) and was manufactured by the Marlin Firearms Company in Connecticut. The firearm does not have a serial number.

10.     The **Target Device** remained secure in the custody of OCPD until October 19, 2022, when OCPD Detective Dustin Willis transferred custody of the **Target Device** to the undersigned HSI SA.

11.     On October 20, 2022, SA O'Dell, in the presence of Computer Forensic Analyst Brandon Frantz, performed a test call to the **Target Device**. The phone number dialed was 572-208-7644. The **Target Device** displayed the incoming call indicating 572-208-7644 is the assigned phone number for the **Target Device**.

12.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones, and specifically an iPhone, have the ability to serve as a wireless telephone, digital camera, portable media player, GPS

3

navigation device, access the Internet, and to use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

13.     There is probable cause to believe that things that were once stored on the **Target Device** may still be stored there, at least for the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery"

c.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

14.     *Forensic evidence*.   This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on

4

the warrant, but also forensic evidence that establishes how the **Target Device** was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **Target Device** because:

        a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

        b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on an electronic device is evidence may depend on

other information stored on the device and the application of knowledge about how that particular device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  15. *Nature of examination.* The warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

  16. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

17.     In light of the facts of this case, as well as the information about electronic device outlined in this Affidavit, I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **Target Device**.

Respectfully submitted,

AARON O'DELL
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me this 24th day of October 2022.

United States Magistrate Judge
Western District of Oklahoma

7